10-3778 Shirley Berg v. Kuhn & Marder v. E&G America Starting with the epilogue. Both walk up. We'd like to see it. And put down the microphone so we can hear you too. This is being taped for posterity and for the Internet. Good morning, Justices. My name is Jonathan Mann. I represent the Appellant Shirley Berge. Okay. Good morning, Justices. My name is Janet Flynn, and I represent the Defendants Appellees Kuhn & Mader and E&G America, Inc. Each side has 15 minutes pursuant to our rules. However, if you go over, we don't look at our watches. But you have to make it interesting to keep it moving along. And we do appreciate it if you get to your strongest point first. I can assure you that we've all pulled cases on it. We've looked at the pertinent portions of the record. We've read your briefs. So no need to give us long facts. Cut right to the chase. And anytime you're ready then, Mr. Mann. Just real briefly, I understand that Your Honors have the command of the cases. Nonetheless, I just real briefly wanted to go through that the plaintiff and her husband filed the Chapter 13 bankruptcy on April 28, 2006. About a month later, she was rear-ended in an auto accident. During the pendency of the Chapter 13 bankruptcy, various amended schedules were filed by the debtors. On May 14, 2009, the debtors voluntarily converted their bankruptcy from a Chapter 13 to a Chapter 7. On October 8, 2010, the case was closed and the debtors received a no-asset report discharge. Right now, if it were a Chapter 7 to begin with, she wouldn't have been required to report the subsequent accident case. Am I correct? Correct. But she filed the 13th. She filed the Chapter 13. It was a continuing debt reorganization situation. And it was incumbent upon her to amend her schedules. I'm sorry, sir. I didn't It was incumbent upon her to amend her schedules, which she did not until this motion in the Circuit Court was filed. There were various amendments to the petition that were filed. But when you talk about the amendment, I assume you're talking about with regards to this personal injury action. And yes, Judge, she was under that duty. Proceed. The plaintiff filed a personal injury complaint on October 13, 2007, after the filing of the Chapter 13. On July 2, 2010, the defendants filed their motion for summary judgment. After argument and supplemental briefs, which were requested by the trial judge, summary judgment was entered in favor of the defendants and against Mary Berge. We contend that the trial court erred in two respects, one by invading the exclusive jurisdiction of the bankruptcy court by finding that the plaintiff's voluntary conversion of her Chapter 13 to the Chapter 7 was done in bad faith. We also contend that the facts do not support an inference made by the trial court that the plaintiff deliberately concealed her claim against the defendants from the bankruptcy court. And what's your best case for the proposition that this court and the trial court in state court would have to find bad faith? Well, Judge, I think that to answer your question, I believe that one of the strongest cases that supports the plaintiff's proposition is the Yeager case, Yeager v. Clearwind Products. And that was a similar situation where the court did not make a determination that because a post-petition action was not listed or amended, schedules were filed, that there was not bad faith. And the key here is the bad faith. The trial court in our case made a determination that just strictly based on the pleadings that were filed in the bankruptcy court, that in fact the plaintiff herein was in bad faith. I think she declined to say that, didn't she? I thought that Brewer said I don't have to find bad faith, and so she didn't find it. And Daly v. Smith would also indicate we don't need to find bad faith. Once you fail to mention it, disclose this other action, judicial estoppel applies. Well, Judge, except that there's that exception that's carved with regards to inadvertent omission, and that's the situation here. Mary Berge, when she originally spoke with her bankruptcy lawyer, talked about it. She's not a lawyer. She doesn't work in the law. She was relying on advice of counsel. And the advice of counsel was I don't remember a thing, right? Correct, Your Honor. Counsel, can I ask you, whose burden is it to come forward with the showing of either good or bad faith, and what do they need to prove? Well, I believe, Your Honor, that they need to show intent. Who needs to show that? The defendant needs to show that? I'm sorry. I didn't mean to interrupt you. Go ahead. Yeah, I would submit to Your Honor that it's their burden. It's the defendant's burden to show the bad faith. But where do you get that? From what case? Well, in the Yeager case, they talked about lack of intent to defraud, lack of intent to conceal, Judge. But again, I was wondering what the process is under an Illinois case that would give us guidance as to how to proceed. Well, under the Illinois, you know, Illinois obviously follows the five-prong test, which the trial judge here didn't follow, and it specifically points to intent. Wait, the trial court did not follow it? Correct. Which prong? That would be, I believe, the third prong of the intent prong. Well, going back, so you're suggesting inadvertence that she met her burden, or you claim it's the other side's burden when she failed to disclose this, that somehow it's the burden of the defendant, the motion to dismiss, has the burden to try and prove the motive of the other side, which is a little surprising. But there are numerous cases out there not saying that something is inadvertent in this context only when the debtor either lacks knowledge of the undisclosed claims, which surely she did not, or two, has no motive for their concealment, and here she got a no asset discharge. Right? There's a bunch of cases saying that. Correct. So do you argue that your client meets the inadvertence standard under those cases, that she did not know about her claim? It's not that she didn't know about it. She disclosed it to counsel. She was under the impression that she was covered as far as whatever had to be done in the bankruptcy court. When she found out that it was an issue, that it wasn't listed, that's when the lawyer's phone calls were made, and ultimately her bankruptcy lawyer went before the bankruptcy court seeking to amend the schedules to add that claim. And cite a case for the proposition where somebody bought that argument, that some court somewhere said that's sufficient to blame your bankruptcy lawyer. I don't want to come off Your Honor as saying that she's blaming her bankruptcy lawyer. Well, clearly she is. Why would you phrase it? Your Honor can certainly read between the lines. So I guess I would acquiesce that the knowledge was imparted to counsel, and she was going on advice of counsel. But at the end of the day, when she's in front of this trustee, in this case she was sworn, and the trustee specifically asked her, not her lawyer, but you, Ms. Bergey, do you have any other assets that you haven't disclosed? The answer was no, no, I don't have any other assets I've not disclosed. Is that correct? Correct, Judge. And I believe that that response was based upon her assumption that in discussing the matter with bankruptcy counsel that it was taken care of. So she wasn't in there attempting to mislead the trustee. She was under the belief at that point in time that everything had been taken care of. Well. Listed on the schedules. But she had this. The question was did she have anything that was not listed on the schedules, and this was not listed on any schedule at that time, was it? It was not. But at that point in time, she believed that it was listed because she had conversations advising her counsel, her bankruptcy counsel, that she was involved in this accident. Going back to my question, can you cite a case where somebody bought that argument? Or should we be the first court in the land to say that's okay to say your lawyer, you told your lawyer it's good enough for us? No, Judge. I believe that there are cases that talk about inadvertence, and that's not a just because someone has inadvertently left something off doesn't necessarily equate to intent to deceive the court. And, again, your position is that you think we should set a standard where we can only apply judicial estoppel when there's an intent to deceive the court. In Illinois, intent is one of the five pronged tests. Yes, Judge. I believe that that is a standard. And we should not use a standard of inadvertence, which would only include where the claimant, the debtor, rather, just lacks knowledge or that the debtor has no motive for lying about, for not disclosing it. Correct. That would be bad. Again, can you cite a case where that has been done, where a court has said, preferably a court of review, has said, you know, May I just have one moment to check my notes, Your Honor? Certainly. Thank you. I apologize. No problem. Bad legal advice doesn't relieve the client of the consequences of their own acts. The client certainly had a motive to keep it concealed. She wanted to preserve her PI case. I'm sorry. Are you asking me? You may respond. It appears, I mean, the law that I have read is that the legal advice, as bad as it was, doesn't relieve her of her responsibilities, nor does it eradicate what appears to be a motive to conceal on her part. I agree, Your Honor. However, the cases with regards to inadvertence don't equate to, this is the end of the line for a litigant. And I would point to your, I'm sorry, I'm sorry, Your Honor. I wanted to get back to your Honor. The Yeager case, I believe, is the one that talks about inadvertence. I pulled a bunch of your cases, but I don't come across anything Yeager. Can you give me a site? Oh, yeah, absolutely. Sometimes I just get one name. Yeager v. Clear Wing Products, 465F Sup, 2D879, Southern District of Illinois, 2006. Counsel, following up on that, how do you distinguish, and you attempt to distinguish Burns v. Hemphill, but isn't it a similar circumstance where the court there inferred that there was intent to mislead in the actions of the person that was convicted? Judge, I think what's key here is that determination of intent rests with the bankruptcy court and not with the state court. That what I submit to you is the following, is that under Hallis v. Playtech, Congress conferred exclusive jurisdiction of the bankruptcy courts to make determinations about bad faith and bankruptcy matters. In the case before you, you have Judge Brewer, you have a state court judge, who's making that determination. And as it noted in Hallis v. Playtech, a Northern District bankruptcy case, where in the debtor moved for sanctions for violations of automatic stay by a creditor, the bankruptcy court determined that the state court had parallel jurisdiction and they allowed a motion for sanctions to be heard in state court. And the federal court reasoned that state courts do not possess the jurisdiction to entertain and decide upon questions and issues of federal bankruptcy law. Congress granted that federal court the original and exclusive jurisdiction over bankruptcy law. Didn't you say the third prong of the five prongs of the Illinois test talks about intent? Yes. So couldn't she have used that prong that she inferred from the actions of your client that there was intent? Well, here's the one thing, Judge. Mary Berge twice went before the bankruptcy court post-petition. She went before it to file amended schedules. Actually, three times. Twice she went before them to file amended schedules. Also one time to go in to reopen the estate to list this case. So there were three opportunities there for the bankruptcy court to make a determination as to whether or not that was, in fact, bad faith. It was well after that attempt or the reopening was well after this case was filed and the motion for a summary judgment was filed. Isn't that right? After it was filed, yes, Judge. However, it had not been finally decided. Well, it had actually been ruled on, just the motion reconsidered, that it had not been written. Is that correct? No. The trial court had indicated, did they not? No. My understanding, Judge, was that, and I didn't do the arguments, is that the trial court asked for additional briefs with regards to these issues that we're talking about right here today. If we were to agree with you, wouldn't we be exceeding our jurisdiction of our trial courts to the whims of a bankruptcy trustee in terms of a case is filed in state court, the state court rules upon it, and according to Daley v. Smith, this is not a bankruptcy case any longer. Bankruptcy, you do whatever you want. You want to proceed. What happens in state court is determined by the state court, which is where Ms. Berge filed. And yet, if we agree with you, and again, not just for Ms. Berge, but every case for eons, that any time somebody leaves off an asset, that we should exceed to whatever a bankruptcy trustee wishes to do, even if it's done after the fact, after a motion to dismiss is filed for not filing an asset. Is that what we should do? Well, Judge, what I would respond to is that those determinations belong in the bankruptcy court. That was directly an issue in Daley v. Smith, and this court, the First District, said no. In the case you cite, out of Indiana, Shoemaker says there is no reading from it. Barring a cause of action in the state court based upon this equitable doctrine does not violate the supremacy clause. The federal courts cannot decide what effect the filing of a state court action in violation of bankruptcy procedures has upon state proceedings. So that's your case. So can you cite a case for that proposition, where this has occurred, that some court has held, that indeed, after the fact, that indeed the case should be removed to bankruptcy court? Other than just, you know, swinging at it. Again, I beg your pardon, other than what? You're swinging at it. You're trying to convince us we should follow this as a rule of law. To do so, we generally like to follow cases. Every case says don't do what you're asking us to do. Can you cite a case that says, you're right, this belongs in bankruptcy court, when a state action is filed after the fact, and they found that they did not list that cause of action as an asset in a bankruptcy, do we have, you're arguing we have to send it back to bankruptcy. Who has ever done that? What court? I would fall back on the Yeager case, Judge. Okay. So you've got a case from Southern District. Okay. Go ahead, though. Anything else? One brief moment. Sure. Take your time. I would just like to address a few other points. Certainly. I believe that the standard in deciding this case is de novo, and in Judge Brewer's determination as to the motion for summary judgment, the defendant's motion for summary judgment was not supported by affidavit. Plaintiff's response to the motion for summary judgment was supported by affidavit of both her personal injury counsel and of the plaintiff, and I would submit to this panel that the defendants didn't meet their burden in prosecuting the motion for summary judgment. Whether the standard of review is de novo or abuse of discretion, we still have to determine whether or not the elements for judicial estoppel have been met. Right. Under either standard, we're examining all of the elements of judicial estoppel. Correct? Correct. Counsel, what's the issue of fact? What's the issue of fact? Well, the issue of fact that were raised by affidavits, Your Honor, that goes back to the argument with regards to inadvertence, that there was no intent. There was no intent to deceive the court and take advantage of one court over the other, that as was spelled out in her affidavit, it was an inadvertence. In Yeager, the plaintiff was injured some months after she filed her Chapter 13 bankruptcy, isn't that right, as opposed to here? Yeah, Judge. No, Mary Berge here was injured after she had filed, post-petition. So they were similar. One was, I think, four or five months, one was five, six months, but they were similar in timing. Okay. Anything else? I have nothing further. You have time for reply after we hear from Ms. Flynn. Thank you. Thank you, counsel. Ms. Flynn. May it please the court. We are here today to defend the ruling that was made by Judge Brewer in December of 2010. As a procedural matter, the issue was briefed completely. We had a first oral argument on it. And at the end of that first oral argument, Judge Brewer asked for us to specifically brief the issue of bad faith as it applied to Illinois case law. In our second set of briefings, both attorneys have only been able to find the Daly case as persuasive law that is on point with respect to bad faith and judicial estoppel as far as Illinois state law is concerned. So both parties decided to use federal law as well. At the end of the argument, the second time, the judge held in favor of us and granted summary judgment. Only at the time that the plaintiff responded in the second set of briefings, which was to be limited to law only, did she turn over the two affidavits. And in our oral argument, we agreed that those affidavits were untimely. And the judge agreed with us, although she did still review the content of both of those affidavits. So they weren't stricken? They were not stricken. But in her ruling, she stated that she refused to use them in her decision. If this court determines that the affidavits are proper and that they should be used, we would like to point out that the affidavit of Mr. Deutschman actually does somewhat contradict the affidavit of the plaintiff in that her attorney did not remember whether or not there was any conversation as to whether she had mentioned this to them. Would it have mattered? I'm sorry? Would it have mattered? There are federal cases where the attorneys signed affidavits. And she called me, and I told her not to put it on there. I do not believe it matters because I believe that there is sufficient evidence here that the plaintiff had a motive to conceal. She listed two other suits on her initial bankruptcy petition, including a personal injury suit. So she was familiar with the process of filing a lawsuit and being a party in a lawsuit prior to filing her Chapter 13 action. She was injured a month after she filed her Chapter 13 and amended her schedules twice before the confirmation in August of 2006, but did not list this cause of action, notwithstanding the fact that she had already retained the plaintiff's counsel in the instant personal injury action. She converted to Chapter 7 almost three years later and did not make any mention or amend her schedules again until right at the time where she converted to Chapter 7, in which case she also did not mention the instant lawsuit. At her 341 meeting of creditors, she was specifically asked point blank whether or not she had any assets other than the assets that were listed in her schedules. She stated no. Every time she signed off on the petition and on the amendment to her schedules, there is a clause in the petition on the schedules that states that she's signing under oath that everything in there is true and accurate to the best of her knowledge, and she signed off on all of these. Two weeks before the Chapter 7 trustee signed off on a no asset finding, her plaintiff's counsel sent us a demand letter for a million dollars. After we filed our motion for summary judgment, she and her bankruptcy attorney moved 60 days later to attempt to reopen this bankruptcy in order to list the asset. That was granted. She listed the asset. However, the asset was listed with an unknown value on it. Summarily, the schedule was filed. The bankruptcy was closed again. Just for my own information, counsel, did you participate in that request to reopen? We did not. Were you advised of it? We did not have notice of it until the second set of briefings, which occurred after the bankruptcy was closed again. So you weren't noticed of it? We did not receive notice of it, no. When the bankruptcy court allowed her to amend at this late time, does that indicate some sort of judicial approval that there was no intention and that it cured the matter? I do not. And that the state court should accept that as a proper procedure which would negate the judicial estoppel doctrine? I do not necessarily believe that to be the case, first and foremost, because I do not believe that the trustee had complete knowledge of all the facts that were underlying with respect to the personal injury case, including the fact that the trustee was unaware that the million-dollar demand existed as the asset was listed with unknown value. When they went in for this amendment, was your client given notice? No. Counsel, let me ask you, we've talked a bit about the Yeager case and the other cases that exist in the federal court relative to this issue of Burns v. Penco, et cetera. How do you explain Yeager, and why shouldn't we consider some of the paragraph that's contained therein? I do not believe that Yeager is consistent with the instant case, in that Yeager was still in open bankruptcy at the time that the motion to dismiss the other action based on judicial estoppel was pending. The Yeager case, I do not believe, followed all of the elements necessary for judicial estoppel, in that the plaintiff did not succeed in the first proceeding and receive a benefit from it because her bankruptcy was still open. She had ample opportunity to amend her schedule, amend the confirmation plan, and proceed with payments, wherein in this case she had made some payments through Chapter 13 for three years, converted to a Chapter 7, received a fining of no assets, and was discharged in bankruptcy before we filed our motion for summary judgment. We only filed our motion for summary judgment once we learned of the fact of her bankruptcy. It had not been disclosed one way or the other in discovery. So as soon as we found out, we filed our motion. There was no motion to strike your motion for summary judgment, was there? There was no pleading there in the motion, was there? No. Thank you. Also, with respect to the Shoemaker case, I believe that that's the Indiana State case that was cited by the plaintiff. I believe that that case is also inapposite. The only debts that the debtor scheduled in his filings were the medical that he had sustained as a result of the PI accident, but he was on Medicare, so he didn't have any debt. And therefore, even though he was discharged, there wasn't really any relief for him at that point. I believe that the most on point of the federal cases is Burns. Burns was a situation where the plaintiff filed a Chapter 13 action shortly thereafter, six months to be exact. He filed an EEOC charge. That was eventually converted a year later to a federal lawsuit. At no point in time did he amend his schedules in order to list this asset. He converted to Chapter 7, once again having to have amended his schedules. He did not list the asset. He received a discharge of no assets, and then the defendants in the EEOC claim filed a dispositive motion based upon judicial estoppel. There, the court found that there was an inference of bad faith in the sense that this asset was not listed, notwithstanding the fact that the schedules were amended several times, and found that the plaintiff's attempt to try and reopen the bankruptcy later was a situation where it was too little too late. And we believe that that is the same case here, where months after we filed our motion for summary judgment was the first time that the plaintiff in this case attempted to do anything to list this as an asset, notwithstanding the fact that her bankruptcy lasted for three and a half years. Thank you. That's it. Thank you very much. Mr. Mann, a brief reply? Just real briefly, I believe, and I apologize for falling back on the Yeager case. The Yeager case is extremely similar to this case before you. The debtor in that case, the plaintiff, went before the court three times to file amended schedules. When the motion for summary judgment was before the court, she responded with affidavits from her bankruptcy counsel and letters and letters, and the court determined that it wasn't a deliberate, intentional act in the non-listing of the case. And the only other comment I would make to this court, with regards to what counsel just said, is that when Mary Berge filed her amended schedules with regards to this case and put a value of unknown, as your honors I'm sure know that oftentimes personal injury lawyers, PI lawyers will make a demand that doesn't necessarily mean that that's the value of the case, but that's a starting point for negotiations. And I would submit to this panel that just because she put down unknown, that that was a realistic evaluation of the value of the case. And no need to apologize, Mr. Mann. It's a case that appears on its face to be on your side, so you should rely upon it. It's a real district court case. It's not an unpublished case like the vast majority of cases in this area are. And it's very difficult to argue when you didn't write the briefs, and you've done a fine job, so don't worry about it. Thank you. We appreciate your fine efforts. Well, this case will be taken under advisement, and this court will be adjourned.